United States v. Giannini is the next case for argument. Mr. Campbell. Yes, sir. Good morning, Your Honors, Counselor. May it please the Court, Judge, Judges, Justices, this case presents... No, we are judges. Judges. Yes, sir. Your Honors, this case presents an extremely unusual situation where two defendants are charged with 14 counts of wire fraud, with one of the defendants charged with an additional six counts of money laundering. The two individuals that are charged are Mario Giannini and Deb Fazio. The entirety of the government's case in chief consisted of testimony and evidence presented against both Ms. Fazio and Mr. Giannini. At the close of the government's case, counsel for Ms. Fazio made a motion... Counsel, there's nothing unusual about this at all. This happens all the time. Maybe not in this context, but in drug cases, the government has to draw the line, right? I mean, it could be 50 people that they can indict, they indict sex. In closing argument, they get up there and they talk about what all 50 people did wrong. They just don't ask the jury to convict the other 44 people that weren't indicted. What's different? Your Honor, I think what's different here is they're actually arguing in their closing argument, they're not just making reference to Ms. Fazio. They're arguing she did bad things that may have been illegal. So what? So what? They're arguing that she's guilty, Your Honor. What difference does that make? Well, the problem with it is... Since she wasn't convicted because she isn't a party. That's correct. I hope you get the point. Your Honor, the problem is that the trial court before the jury continued with the trial admonished the jury to... They do that all the time. I mean, that's the risk when there are two defendants. What if she had pled guilty? There'd be no difference. What if she fled? There'd be no difference. All the judge can do is tell the jury, she's not in front of you anymore. Forget her as if she never existed. And we move on. It strikes me, Your Honor, as it's an entirely separate matter to comment on her participation or comment on the evidence that was presented against Ms. Fazio. Well, it's not as if she didn't exist. I'm not making any claim, Your Honor, that it was against the government that they couldn't comment on Ms. Fazio. But to actually argue that she participated in a scheme and created false invoices surely would have given the jury the impression that she had been found guilty because this was directly contrary to the trial judge's admonishment. Not really because the facts would support the government's argument that she did participate in the scheme and she just didn't do so knowingly. I think that's what the district judge found, right? There's no doubt who prepared the invoices here. The district judge just said, look, you haven't put on evidence that she did so knowing it was a fraud. But she did it. But for her not to have known meant that she wasn't guilty of the offenses charged. Government never argued that, though. What's that? Did the government ever argue that the jury should convict her of the offense as charged? No, the government actually argued in closing contrary to the weight of the evidence and contrary to the jury instruction that the trial court gave to the jury to not concern themselves. Your Honor, those comments, these aren't comments just on the evidence itself. And by the way, I'm not making any sort of argument that the government couldn't comment on the evidence that was presented. But to actually say that she created false invoices certainly... She did. Well, it infers that it was Ms. Fazio that created the false invoices. She did. It was. To argue, Your Honor, respectfully... I think you ought to move to some other argument. Your Honor, in addition, we have a situation here where a key statement that was allegedly made by Mr. Giannini to Mr. Cernak was not disclosed. Wasn't that statement potentially inculpatory, though? Yes, sir. It was clearly arguably inculpatory. So I'm wondering if the district judge here is really doing, I don't want to say doing your client a favor, but he's trying to, Judge Connelly is trying to handle the situation in real time from the bench, make a call, says there's a violation, wants the punishment to fit the crime, no pun intended. So there's that balancing that's going on, including the fact that these notes could potentially be inculpatory. No question, Your Honor. And Judge Connelly did clearly endeavor to handle this situation, in my opinion, very thoroughly, to be honest with you, Your Honor. However, it really did impact the ability to cross-examine the particular witnesses, specifically Mr. Cernak. So I think to assert that the handling by Judge Connelly somehow cleaned everything up, I think diminishes the importance of the right to cross-examination. In other words, she got up there and cross-examined the witnesses without that information. And by the time that information was disclosed, she had the unusual or unenviable task of either getting up and going back through it again or letting it sit. And I think she rightly, Your Honor, let the issue sit. But I assert respectfully that if you look at the record in this case, Your Honor, it's baffling to get into the handling of this particular statement. Where is the abuse of discretion by the district judge? Let's assume there was a violation of Criminal Rule 16. The remedy for that violation is in the discretion of the district judge. So where was the abuse of discretion? Your Honor, it's a tough call. I mean, I can't say that the trial court abused its discretion. Well, if you can't say that, then there's absolutely nothing here. However, Your Honor, if you combine that problem with that statement, with these statements that were made by the government in their closing argument, you're really starting to deprive the defense. This is one of these 0 plus 0 equals 1 arguments. Don't have a good argument about this. Don't have a good argument about that. Put them together, you still don't have a good argument. No, sir. I do think the argument on the closing argument statement is much more powerful, Your Honor. I do think that when you consistently argue the guilt of the defendant when the trial judge has told the jury to not concern themselves with the outcome of that case, that allows the government to take advantage of the acquittal without letting the jury know there was an acquittal. In other words, that this benefited, it completely benefited the government and allowed them to really assert to the jury that she was in fact guilty. And by asserting that she's guilty, Your Honor, it's uniquely tied to the fact that they're in a business together. This is bulldog enterprises. So by connecting them together when the government's entire case was, Mr. Fazio and Mr. Giannini conspired really to defraud and commit wire fraud against the township of Bloomingdale, that makes it even more of a powerful argument that they shouldn't have been able to argue what they did in closing argument. Your Honor, I'd like to reserve my time. Certainly, counsel. Thank you, Judge. Ms. George. Good morning, and may it please the court. Ashley Chung on behalf of the United States. The government's references in closing to Ms. Fazio, Mr. Giannini's acquitted co-defendant, were appropriately based on the trial evidence and plainly relevant to the charges that were still pending against the defendant. Prior to Ms. Fazio's acquittal on her Rule 29 motion, the jury had already received evidence that Ms. Fazio was the sole owner and officer of Bulldog Earthmovers, the company that profited from the fraudulent scheme, that she and the defendant, Mr. Giannini, were the two people that actually made up and worked in that company, though Mr. Giannini was paid off the books, and that Ms. Fazio was the person who handled all of the company's finances and records, including preparing invoices, having sole control of the company's bank accounts, where the proceeds from the fraudulent scheme were deposited, and also responsible for signing and issuing all of the checks, including the kickback checks that were paid to the corrupt highway commissioner. Thus, the government's argument in closing, in which it referenced Ms. Fazio, were plainly relevant to the case against the defendant, her longtime partner in both life, as well as in the very company that benefited from the scheme. The government's argument did not extend to arguing Ms. Fazio's guilt. It did not cross the line into inviting the jury to speculate about what happened to the charges against Ms. Fazio, nor did it invite the jury to convict Mr. Giannini based on guilt by association. Instead, the government cited the trial evidence, argued reasonable inferences about Ms. Fazio's And I think the comparison made to instances where there are uncharged individuals whose conduct nevertheless comes up at trial and is argued in closing is an apt one. That's exactly what happened here. That is not error, much less plain error. And regardless, the defendant did not suffer any prejudice, nor did it affect the outcome of the trial. That's based on both the instructions explicitly given to the jury by the trial judge about not speculating about the reasons why the charges against Ms. Fazio were no longer before the jury, and also the instructions thrice given about the fact that what lawyers say during the trial is not evidence. Ms. Chung, moving to Mr. Campbell's second argument, no lawyer ever wants to cross-examine a witness without all documents. Yes, Your Honor. Results in waving of hands and raised voices because of the lack of the documents. Why is that not a problem here? Yes, Your Honor. There's no doubt here that there was a late disclosure of agent's notes that did contain an inculpatory statement by the defendant as reported by the cooperating co-defendant, the highway commissioner in this case. That said, the reason that's not a problem here is because as the trial court correctly found, there was no reasonable possibility of prejudice that would affect the jury's verdict here. Although the defendant again primarily the cooperating co-defendant, but also to some extent the case agent was somewhat hampered by this late disclosure, the fact still remains that the defense counsel at trial was still able to establish that the earliest that Mr. Cernak, the cooperator, had mentioned this inculpatory statement by the defendant was still shortly before trial at the earliest. And thus, defense counsel was still able to make her argument, as she did in closing, that this was a statement that should not be believed, that defendant had essentially made it up last minute before trial in order to shore up his cooperation with the government. So you can see a circumstance in which a remedy would be insufficient. You believe the remedy here was sufficient because it gave defense counsel options as to how to handle it? Yes, Your Honor. Here, the trial court specifically first, I think, barred the government from using the agent's notes at trial to corroborate Mr. Cernak and to corroborate the case agent. I think that was an effective penalty that addressed the violation. But as Your Honor noted, the trial judge also offered defense counsel the opportunity to recall and recross government witnesses. And though defense counsel ultimately elected not to do so, the fact that that opportunity was there adequately addressed any risk of prejudice arising from the timing of this disclosure. And taken all together, along with the fact that already defense counsel had effectively cross-examined Mr. Cernak quite extensively about all of his prior lies, falsehoods, and shifting and inconsistent statements to the township, to friends and family, to coworkers, as well as to law enforcement and prior proffers, and also the fact that defense counsel had the opportunity to, I think the trial judge used the language, to batter the case agent on cross-examination about his failure to include that inculpatory statement in the report of the proffer, and then also had the opportunity to then argue in closing, as she did, about the fact that the case agent apparently thought so little of the statement reported by the cooperator that it wasn't even included in the report. I think taken all together, the circumstances of the trial, the remedies that were fashioned by the trial court here, adequately addressed any risk of prejudice, and thus the trial court acted well within its discretion in implementing those alternative remedies and denying a mistrial. Unless there are any questions, I would just respectfully ask this court to affirm. Thank you, counsel. Anything further, Mr. Campbell? Just briefly, Your Honor. Justice Brennan, just to respond to your question, although it's always a difficult argument to make that a trial judge abused his discretion, I think it's important to give consideration to the remedies that are offered by the trial judge. In this case, we have an inculpatory statement, essentially a statement made by Mr. Cernak, that Mr. Giannini's admitting that he participated in this scheme. So the argument, from your perspective, I understand it to be, this is sufficiently inculpatory that I can't take the option of recalling this witness. That's correct. It's going to do more damage than good. Well, you look like a fool, Your Honor, if you're a defense lawyer. If that's the case, playing that down the board, the consequences would be what questions would have been asked the first time. I don't think that there really would have been a remedy here because it's already happened. The bell has already been rung. You have already put yourself in a position where defense lawyers have a particular interest in maintaining credibility with the jury. So to get up there and cross-examine this witness without knowing that statement, you really are presenting yourself as somebody that's not prepared. And even if you take the court's suggestions and recross that particular witness, now you're compounding the initial problem, which really should have fallen. The burden of that damage should have fallen on the government, who didn't disclose the witness. Instead, the burden falls on the defendant, who's presumed innocent. And, Your Honors, just in conclusion, one statement that was made in closing argument by the government stated as follows. This is evidence of a plan of a scheme by two critical players, Bulldog Earthmovers, and I paraphrase, Bloomingdale Township. Bulldog Earthmovers is Depfazio. So they are saying that she, there's evidence that was presented of a scheme by her. That's directly contrary to the directed findings by Judge Canale. And, again, if you believe that, then you would believe that. Thank you, Counsel. Excuse me, Judge? Your time is expired. Thank you, Judge. Case is taken under advisement.